IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LOGANTREE LP | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 18-1617 (MN) |
| | ) |
| OMRON HEALTHCARE, INC., | ) |
| | ) |
| Defendant. | ) |

# MEMORANDUM OPINION

Gregory E. Stuhlman, Stephanie H. Dallaire, CHIPMAN BROWN CICERO & COLE, LLP, Wilmington, DE; Arnold Shokouhi, Christopher M. Barkley, James E. Sherry, MCCATHERN, PLLC, Dallas – Attorneys for Plaintiff

Adam W. Poff, Robert M. Vrana, YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, DE; Matthew B. Lowrie, Lucas I. Silva, FOLEY & LARDNER LLP, Boston, MA – Attorneys for Defendant

September 19, 2019
Wilmington, Delaware

*Maryellen Noreika* [signature]

**NOREIKA, U.S. DISTRICT JUDGE:**

Before the Court is Defendant Omron Healthcare, Inc.'s ("Defendant" or "Omron") "Rule 12(b)(6) Motion to Dismiss, or In the Alternative, Motion to Stay, or In the Alternative, 28 U.S.C. § 1404(a) Motion for Transfer to the Northern District of Illinois." (D.I. 9). Plaintiff LoganTree LP ("Plaintiff" or "LoganTree") opposes Omron's motion. (D.I. 13). For the reasons set forth below, the Court grants-in-part and denies-in-part Omron's motion.[1]

## I. BACKGROUND

On October 18, 2019, LoganTree filed the present action, accusing Omron's wearable accelerometer-based activity trackers of infringing various claims of U.S. Patent No. 6,059,576 ("the '576 Patent").[2] (D.I. 1 ¶¶ 1, 17-26). The '576 Patent, entitled "Training and Safety Device, System and Method to Aid in Proper Movement During Physical Activity," issued on May 9, 2000, with three independent claims and twenty-six dependent claims. (*Id.* ¶¶ 7, 11). In March of 2015, the United States Patent and Trademark Office ("USPTO") issued a reexamination certificate for the '576 Patent, bearing U.S. Patent No. 6,059,576 C1.[3] (*Id.* ¶ 8). Through reexamination, the three independent claims, claims 1, 13, and 20, were amended and an additional 156 dependent

---

[1] The portion of Omron's motion directed to stay pending *inter partes* review ("IPR") is denied as moot. On August 28, 2019, the Patent Trial and Appeal Board ("PTAB") issued two Final Written Decisions relating to the asserted claims of the '576 patent, finding that the petitioner had not met its burden in showing that the claims were unpatentable. *See Garmin Int'l, Inc., et al. v. LoganTree LP*, No. PTAB-IPR2018-00564, Paper 25 at 2 (P.T.A.B. Aug. 28, 2019); *see also Garmin Int'l, Inc., et al. v. LoganTree LP*, No. PTAB-IPR2018-00565, Paper 24 at 2 (P.T.A.B. Aug. 28, 2019).

[2] Specifically, LoganTree accuses the following Omron products of infringement: the Alvita Wireless Activity Tracker, the Alvita USB Pedometer with Four Activity Modes, the Alvita Ultimate Pedometer, and the Alvita Optimized Pedometer with Four Activity Modes (collectively, "the Accused Products"). (D.I. 1 ¶ 18).

[3] The reexamination was requested by LoganTree. (D.I. 1 ¶ 8).

claims were issued, "for a total of 185 patented claims." (*Id.* ¶ 11).  The '576 Patent expired on November 21, 2017.  *See* '576 Patent.

Relevant to Omron's motion to transfer, LoganTree is a Nevada partnership. (*Id.* ¶ 2).  Its sole general partner is Gulfstream Ventures, LLC, a Nevada limited liability company, which is owned and managed by Theodore[4] and Anne Brann of Boerne, Texas.  (*Id.*).  Omron is a Delaware corporation with a principal place of business in Illinois.  (*Id.* ¶ 3).

## II. LEGAL STANDARDS

### A. Motion to Dismiss Under Rule 12(b)(6)

In ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all well-pleaded factual allegations in the complaint as true and view them in the light most favorable to the plaintiff.  *See Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010); *see also Phillips v. Cty. of Allegheny*, 515 F.3d 224, 232-33 (3d Cir. 2008).  "[A] court need not 'accept as true allegations that contradict matters properly subject to judicial notice or by exhibit,' such as the claims and the patent specification." *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017) (quoting *Anderson v. Kimberly-Clark Corp.*, 570 F. App'x 927, 931 (Fed. Cir. 2014)).  Nor is the Court required to accept as true bald assertions, unsupported conclusions or unwarranted inferences.  *See TriPlay, Inc. v. WhatsApp Inc.*, No. 13-1703 (LPS) (CJB), 2018 WL 1479027, at *3 (D. Del. Mar. 27, 2018).  Dismissal under Rule 12(b)(6) is only appropriate if a complaint does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  This plausibility standard obligates a plaintiff to provide "more

---

[4] Theodore Brann is the sole named inventor of the '576 Patent.  (D.I. 1 ¶ 9).

2

than labels and conclusions, and a formulaic recitation of elements of a cause of action." *Twombly*, 550 U.S. at 555. Instead, the pleadings must provide sufficient factual allegations to allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 506 U.S. at 678.

### B. Motion to Transfer Pursuant to 35 U.S.C. § 1404(a)

District courts have the authority to transfer venue "[f]or the convenience of parties and witnesses, in the interests of justice, . . . to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). However, "[a] plaintiff, as the injured party, generally ha[s] been 'accorded [the] privilege of bringing an action where he chooses," *Helicos Biosciences Corp. v. Illumina, Inc.*, 858 F. Supp. 2d 367, 371 (D. Del. 2012) (quoting *Norwood v. Kirkpatrick*, 349 U.S. 29, 31 (1955)), and this choice "should not be lightly disturbed," *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).

The Third Circuit has recognized that:

> [i]n ruling on § 1404(a) motions, courts have not limited their consideration to the three enumerated factors in § 1404(a) (convenience of parties, convenience of witnesses, or interests of justice), and, indeed, commentators have called on the courts to "consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum."

*Jumara*, 55 F.3d at 879 (citation omitted). The *Jumara* court went on to describe twelve (12) "private and public interests protected by the language of § 1404(a)." *Id.* The private interests include:

> plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses – but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

3

*Id.* at 879 (citations omitted). The public interests include:

> the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879-80.

The party seeking transfer bears the burden "to establish that a balancing of proper interests weigh[s] in favor of transfer." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970). Moreover, though courts have "broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer," *Jumara*, 55 F.3d at 883, the Third Circuit has held that "unless the balance of convenience of the parties is strongly in favor of [the] defendant, the plaintiff's choice of forum should prevail." *Shutte*, 431 F.2d at 25.

## III. DISCUSSION

Omron argues that the Court should dismiss LoganTree's Complaint because LoganTree fails to plausibly allege that the Accused Products infringe the '576 Patent. (D.I. 10 at 2). In the alternative, Omron asks the Court to transfer this case to the Northern District of Illinois. (*Id.* at 2-3). As discussed below, the Court will grant-in-part and deny-in-part Omron's motion to dismiss and will deny Omron's motion to transfer.

### A. Omron's Motion to Dismiss

In its Complaint, LoganTree alleges that the Accused Products infringe at least claims 1, 13, and 20 of the '576 Patent. (D.I. 1 ¶¶ 17-26). Addressing these allegations, Omron contends

that LoganTree fails to plausibly allege direct infringement of claims 1 and 13[5] as well as direct and indirect infringement of claim 20. (D.I. 10 at 8-10). For the reasons below, the Court will deny Omron's motion as directed to claims 1 and 13 but will grant Omron's motion as directed to claim 20.

        1.       <u>Claims 1 and 13</u>

Omron contends that LoganTree has not plausibly pleaded claims for direct infringement of claims 1 and 13 because it has not alleged that the Accused Products meet every limitation of those claims. (*See* D.I. 10 at 8-9; *see also* D.I. 16 at 3-5). Specifically, Omron contends that LoganTree fails to plausibly allege that the Accused Products meet the limitation requiring a "movement sensor that 'measures the angle and velocity of . . . movement.'"[6] (D.I. 10 at 8 (citing D.I. 1, Ex. C at 22)).

Liability for direct infringement arises under 35 U.S.C. § 271(a) when a party, without authorization, "makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent." The activities set forth in § 271(a) do not result in direct infringement unless the accused product embodies the complete patented invention. *See Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1252 & n.2 (Fed. Cir. 2000). Therefore, to state a claim of direct infringement sufficient to withstand a motion to dismiss, a plaintiff must plead facts that plausibly suggest that the accused

---

[5]    Although Omron's opening brief in support of its motion to dismiss does not address claim 13, its reply brief seems to suggest that the allegations regarding claim 13 are insufficient for the same reasons as the allegations regarding claim 1. (D.I. 16 at 3-5). Thus, the Court will address claims 1 and 13 together.

[6]    Both claim 1 and 13 contain this limitation. *See* Reexamined '576 Patent at claims 1, 13.

product meets each limitation of the asserted claim(s). *See TMI Sols. LLC v. Bath & Body Works Direct, Inc.*, No. 17-965 (LPS) (CJB), 2018 WL 4660370, at *9 (D. Del. Sept. 28, 2018).

The Federal Circuit has provided guidance on pleading direct infringement under *Iqbal / Twombly*. *See generally Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256 (Fed. Cir. 2018). In *Disc Disease*, the Federal Circuit reversed the district court's dismissal of plaintiff's direct infringement claims, finding that the plaintiff's allegations were sufficient under the plausibility standard of *Iqbal* and *Twombly* because the complaint specifically identified the three accused products and alleged that the accused products met "each and every element of at least one claim" of the asserted patents, either literally or equivalently. *Disc Disease*, 888 F.3d at 1260. Following *Disc Disease*, another court in this District similarly found that a plaintiff plausibly pleaded an infringement claim where the complaint specifically identified the infringing product and alleged "that it practices each limitation of at least one claim in" the relevant patents. *Promos Tech., Inc. v. Samsung Elec. Co.*, No. 18-307 (RGA), 2018 WL 5630585, at *4 (D. Del. Oct. 31, 2018); *see also AgroFresh Inc. v. Hazel Techs., Inc.*, No. 18-1486 (MN), 2019 WL 1859296, at *2 (D. Del. Apr. 25, 2019) (applying *Disc Disease* to find allegations of direct infringement sufficiently pled); *DoDots Licensing Sols. LLC v. Lenovo Holding Co.*, No. 18-98 (MN), 2018 WL 6629709, at *2 (D. Del. Dec. 19, 2018) (same).

Here, the Court finds that LoganTree has plausibly pleaded claims for direct infringement of claims 1 and 13. In its Complaint, LoganTree identifies several of Omron's products by name, and accuses those products of infringing claims 1 and 13. (D.I. 1 ¶¶ 17-22). LoganTree explains how the Accused Products allegedly infringe claims 1 and 13 by describing how the Accused Products meet the each and every claim limitation of those claims. (*Id.*; *see also id.*, Ex. C (claim chart demonstrating how the Alvita Wireless Activity Tracker allegedly infringes claim 1)). For

example, focusing on the "angle and velocity" claim limitation that Omron singles out as being inadequately pleaded, the Complaint alleges that the Accused Products meet this limitation because they "[c]ontain[] a movement sensor – specifically, a 'Tri-axis 3D smart sensor' – capable of measuring data associated with body movement . . . and which measures the angle and velocity of such movements." (D.I. 1 ¶ 20(b)). A claim chart attached to the Complaint also notes that this limitation is satisfied because the Accused Products have the ability to track "aerobic steps." (*See id.*, Ex. C at 21). Although Omron contends that these allegations are inadequate because the Complaint does not explain how the Tri-axis 3D smart sensor measures "angle and velocity" or how "aerobic steps" equate to "angle and velocity" (*see* D.I. 10 at 8-9; D.I. 16 at 3-5), these contentions challenge the viability of LoganTree's infringement claims, rather than the plausibility of those claims. Thus, pursuant to the Federal Circuit's decision in *Disc Disease*, the Court finds that these factual allegations state plausible claims for direct infringement of claims 1 and 13 and are sufficient to put Omron on notice of LoganTree's claims against it. Omron's motion to dismiss as directed to claims 1 and 13 is denied.

2. Claim 20

Claim 20 of the '576 Patent is a method claim, which requires attaching "a portable, self-contained measuring device" to a body part of an individual to measure and interpret, among other things, the physical movement of that said body part. (*See* D.I. 1 ¶ 23; *see also* Reexamined '576 Patent at claim 20). Omron argues that LoganTree's allegations regarding claim 20 are inadequate for several reasons. First, Omron contends that LoganTree fails to adequately plead direct infringement because LoganTree "does not . . . plead facts sufficient to support the interference that Omron itself practiced the method of claim 20 which [] requires attaching a device to one's body, measur[ing] data with the device, storing data, etc." (D.I. 10 at 9 (emphasis omitted)).

Second, although LoganTree alleges in the Complaint "that claim 20 is infringed . . . 'when the [Accused Products are] used as intended and instructed by Omron'" (*id.* (quoting D.I. 1 ¶ 23)), Omron asserts that LoganTree does not actually assert indirect infringement, and even it if did, the allegations remain inadequate because the "Complaint does not allege that Omron was aware of the '576 Patent before it expired or that Omron possessed the intent to cause direct infringement by any third party." (*Id.*).

After reviewing the Complaint, the Court agrees with Omron and finds that LoganTree's allegations regarding claim 20 of the '576 Patent are deficient. As an initial matter, the Court notes that it is unclear whether LoganTree is asserting direct infringement or indirect infringement or both. In response to Omron's challenge to the sufficiency of its allegations, LoganTree contends that it has adequately pleaded indirect infringement of claim 20 (*see* D.I. 13 at 9), but fails to provide any clarification on what theories of infringement it is asserting, *i.e.*, if it is asserting only indirect infringement or if it is asserting indirect infringement in addition to direct infringement. That being said, the Court finds that LoganTree has failed to plausibly plead claims for either direct infringement or indirect infringement. Regarding direct infringement, because claim 20 is a method claim, a claim for direct infringement requires allegations that the defendant has performed every claimed step of claim 20. *See Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311 (Fed. Cir. 2006) ("Method claims are only infringed when the claimed process is performed, not by the sale of an apparatus that is capable of infringing use."). Here, an allegation that Omron, itself, has performed all claimed steps is absent from the Complaint. Instead, LoganTree alleges that the Accused Products infringe claim 20 when they are "used as intended and instructed" by Omron (*see* D.I. 1 ¶ 23), implying that a third party is performing the steps of claim 20. Thus, because

the Complaint does not contain any allegation that Omron has performed every step of claim 20, LoganTree fails to plead a plausible claim for direct infringement of claim 20.

Turning to indirect infringement, the Court agrees with Omron that LoganTree has failed to plead a plausible claim for indirect infringement. (*See* D.I. 10 at 9-10). As an initial matter, the Court questions whether LoganTree actually asserts indirect infringement in its Complaint, given its failure to reference either 35 U.S.C. § 271(b) or 35 U.S.C. § 271(c). (*See* D.I. 1 ¶¶ 17-26). Nevertheless, because LoganTree contends in its answering brief that it is asserting indirect infringement, the Court will address it. Indirect infringement, whether it be induced or contributory, requires pleading that the defendant has knowledge of the patent. *See Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009) ("Inducement requires a showing that the alleged inducer knew of the patent, knowingly induced the infringing acts, and possessed a specific intent to encourage another's infringement of the patent."); *see also Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1926 (2015) ("[C]ontributory infringement requires knowledge of the patent in suit and knowledge of patent infringement."). As LoganTree concedes in its answering brief (D.I. 13 at 9), LoganTree failed to plead in its Complaint that Omron had knowledge of the '576 Patent prior to its expiration. Moreover, LoganTree's Complaint does not contain any allegations regarding Omron's intent to indirectly infringe as required for induced infringement, *see Vita-*Mix, 581 F.3d at 1328, or knowledge of infringement as required for contributory infringement, *see Commil*, 135 S. Ct. at 1926. The Complaint also fails to identify who is performing the underlying act of direct infringement. *See DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1303 (Fed. Cir. 2006) ("[T]he patentee always has the burden to show direct infringement for each instance of indirect infringement."). Thus, LoganTree has failed to state a

plausible claim for indirect infringement of claim 20 of the '576 Patent. Omron's motion to dismiss as directed to claim 20 is granted.

### 3. Leave to Amend the Complaint

Having found that LoganTree has failed to adequately plead infringement of claim 20, the Court now turns to LoganTree's request for an opportunity to amend its pleading to cure the deficiencies. (*See* D.I. 13 at 9). In its answering brief, with respect to indirect infringement, LoganTree concedes that it failed to plead knowledge of the '576 Patent, but alleges that it sent a cease and desist letter to Omron prior to the expiration of the '576 Patent that provided Omron with the requisite knowledge of the patent. (*Id.*; *see also id.*, Ex. A (Letter from A. Shokouri to Omron Management Center of America, Inc. regarding the '576 Patent (Oct. 26, 2017))). In response, Omron contends that even if LoganTree did send a letter to Omron prior to the expiration of the '576 Patent, it would "strain credulity" for LoganTree to plausibly plead "an inference of intent" on Omron's part because doing so would require LoganTree to plead that Omron "receive[d] actual notice of the patent[,] [] develop[ed] the mental state necessary to indirectly infringe it[,] [] sell an accused product with knowledge of the patent and the requisite mental state[,] . . . which then induced or contributed to an act of direct infringement by a user in the United States" within the span of twenty-six days.[7] (D.I. 16 at 5 n.3).

Although the Court acknowledges the short window in which LoganTree must allege the required elements of indirect infringement, whether it be induced or contributory, occurred, the Court cannot say, at this time, that amendment would be futile. *Phillips*, 515 F.3d at 228 ("[I]n

---

[7] The alleged cease and desist letter was sent to Omron on October 26, 2017. (*See* D.I. 13, Ex. A (Letter from A. Shokouri to Omron Management Center of America, Inc. regarding the '576 Patent (Oct. 26, 2017))). As noted above, the '576 Patent expired on November 21, 2017. *See* '576 Patent. Thus, there were twenty-six days between LoganTree's letter and the expiration of the '576 Patent.

10

the event a complaint fails to state a claim, unless amendment would be futile, the District Court must give a plaintiff the opportunity to amend [its] complaint."). Also, to the extent that LoganTree is asserting that Omron has directly infringed claim 20, the Court cannot say that amendment would be futile, given that LoganTree could plausibly plead that Omron has performed every step of claim 20 through the use of the Accused Products. *See DoDots Licensing Solutions LLC v. Lenovo Holding Co.*, No. 18-98 (MN), 2018 WL 6629709, at *3 (D. Del. Dec. 19, 2018) (finding a plausible claim of direct infringement of method claims "based on Defendants' use of the Accused Devices"). Thus, because Rule 15(a)(2) of the Federal Rules of Civil Procedure requires that leave to amend be freely granted "when justice so requires," and because this is the first time that this Court has found LoganTree's allegations deficient, LoganTree will be given leave to file an amended complaint with respect to its allegations regarding claim 20 of the '576 Patent.

### B. Omron's Motion to Transfer

As an initial matter, there is no dispute that this case could have been brought in the Northern District of Illinois. Thus, the issue before the Court is whether to exercise discretion under § 1404(a) to transfer this case to that district.

#### 1. Plaintiff's forum preference

This factor weighs against transfer. "It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request" – one that "should not be lightly disturbed." *Shutte*, 431 F.2d at 25 (internal quotations and citation omitted). "Assuming jurisdiction and proper venue, weight is given to plaintiff's choice because it is plaintiff's choice and a strong showing under the statutory criteria in favor of another forum is

then required as a prerequisite to transfer." *Burroughs Wellcome Co. v. Giant Food, Inc.*, 392 F. Supp. 761, 763 n.4 (D. Del. 1975).

Omron argues that LoganTree's choice of forum is not "[e]ntitled to [s]ignificant [d]eference" because of its lack of connection to Delaware, given that LoganTree is a Nevada partnership, whose sole general partner is a Nevada limited liability company, whose managing members are located in Texas. (D.I. 10 at 14). Moreover, Omron contends that LoganTree "does no business in Delaware" (*id.*) and that "the only connection between this case and Delaware is the fact that Omron chose to incorporate here" (D.I. 16 at 10 (emphasis omitted)). This Court has previously noted that it is "'difficult to understand why the plaintiff's forum choice in and of itself merits less weight when the plaintiff has no ties to the selected forum or when the facts underlying the controversy occurred elsewhere'" and that "'[n]either *Shutte* nor *Jumara* hold or even intimate that a plaintiff's motive in selecting its forum choice is relevant for § 1404(a) purposes.'" *ANI Pharm., Inc. v. Method Pharm., LLC*, No. 17-1097 (MN), 2019 WL 176339, at *8 (D. Del. Jan. 11, 2019) (quoting *VLSI Tech. LLC, v. Intel Corp.*, No. 18-966 (CFC), 2018 WL 5342650, at *2, 5-6 (D. Del. Oct. 29, 2018)). Likewise, here, where Omron has not challenged the validity of venue or jurisdiction in Delaware, the Court is not convinced that LoganTree's lack of connection to Delaware should dictate that its choice should receive less deference. Therefore, LoganTree's choice is entitled to paramount consideration.

2. Defendant's forum preference

This factor favors transfer. Omron's interest in having this case transferred to the Northern District of Illinois is clear.

### 3. Whether the claims arose elsewhere

This factor bears only slightly on the transfer analysis. Here, Omron asserts that "all of the Omron conduct related to the accused devices occurred in Illinois." (D.I. 10 at 15 (citing D.I. 11 §§ 6-7)). This connection favors transfer. *See In re Hoffmann–La Roche, Inc.,* 587 F.3d 1333, 1338 (Fed. Cir. 2009). That being said, however, patent claims arise wherever the allegedly-infringing products are sold, and Omron does not dispute that the accused products in this case are marketed and sold in Delaware. *VLSI*, 2018 WL 5342650, at *6 (citing *Treehouse Avatar LLC v. Valve Corp.*, 170 F. Supp. 3d 706, 710 (D. Del. 2016) ("A claim for patent infringement arises wherever someone has committed acts of infringement, to wit, 'makes, uses, offers to sell, or sells any patented invention' without authority.")). Thus, this factor weighs in favor of transfer, but does so only slightly.

### 4. Convenience of the parties as indicated by their relative physical and financial condition

This factor weighs slightly against transfer. Omron argues that "[l]itigating this case in the Northern District of Illinois will reduce personal and professional costs for Omron and LoganTree employees/partners alike." (D.I. 10 at 16). Omron's size, financial resources, and status as a Delaware corporation, however, negate any assertion that it is actually inconvenienced by having to litigate in Delaware. As a Delaware corporation with global operations, Omron can demonstrate "inconvenience" pursuant to § 1404(a) only if it can "prove that litigating in Delaware would impose a unique or unusual burden on [its] operations." *Graphics Props. Holdings Inc. v. Asus Comput. Int'l, Inc.*, 964 F. Supp. 2d 320, 325 (D. Del. 2013) (internal quotation marks and citation omitted) (alteration in original); *see also Universal Secure Registry, LLC v. Apple, Inc.*, No. 17-585 (CFC) (SRF), 2018 WL 4502062, at *3 (D. Del. Sept. 19, 2018) ("When a party accept[s] the benefits of incorporation under the laws of the State of Delaware, a company should not be

successful in arguing that litigation in Delaware is inconvenient, absent some showing of a unique or unexpected burden." (internal quotation marks and citation omitted) (alteration in original)).

Here, Omron has not identified any significant inconvenience – let alone a unique or unusual burden – that it would incur as a party to litigation in this Court. Although Omron asserts that if the case stays in Delaware, it "will cause logistical and operational costs for any Omron employees that would need to travel to Delaware for trial" (D.I. 10 at 16), the Court is not convinced that this would amount to a unique or unusual burden, given Omron's size and the ability of its party witnesses to work remotely if need be.

As for LoganTree, Omron contends that the Northern District of Illinois is more convenient because "[f]or LoganTree witnesses coming from Nevada or Texas, flying to Chicago, Illinois is also more convenient than Delaware." (*Id.*). The Court disagrees. LoganTree "has chosen to litigate this matter in Delaware and that choice signals its belief that litigation here is most convenient for it, for whatever its reasons." *Tessera, Inc. v. Sony Elecs. Inc.*, No. 10-838 (RMB) (KW), 2012 WL 1107706, at *4 (D. Del. Mar. 30, 2012). Moreover, the Court is able to discern from the record that LoganTree is much smaller in stature than Omron. (D.I. 1 ¶ 2). Therefore, in balancing the convenience of litigating in the Northern District of Illinois for Omron with (1) Omron's status as a Delaware corporation with a global presence, and (2) the convenience of litigating in the District of Delaware for LoganTree and its status as a small company, this factor weighs against transfer. But, given the fact that LoganTree will have to travel regardless of where this case is litigated, this factor will be given only slight weight.

5. Convenience of the witnesses

This factor is neutral. This factor carries weight "only to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879; *see also VLSI*, 2018

WL 5342650, at *7 (citing *Smart Audio Techs., LLC v. Apple, Inc.*, 910 F. Supp. 2d 718, 732 (D. Del. 2012) (noting that this factor applies only insofar as "a witness actually will refuse to testify absent a subpoena")). Moreover, "witnesses who are employed by a party carry no weight," because "each party is able, indeed, obligated to procure the attendance of its own employees for trial." *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 203 (D. Del. 1998).

Here, neither party identifies the existence of any third-party witnesses, let alone any third-party witnesses that would not be willing to testify at trial. Omron contends that the Northern District of Illinois would be more convenient as "any Omron witnesses will likely be in Illinois." (D.I. 10 at 16 (citing D.I. 11 ¶¶ 3-4, 6-7)). But there is no information in the record that these witnesses are third-parties and not Omron employees. Omron's submitted declaration only notes that it does not have any offices or employees in Delaware and that any witnesses with knowledge of Omron's activities would be in Illinois, which is where it is headquartered. (*See* D.I. 11 ¶¶ 2, 3-4, 6). There is no suggestion that these "Omron witnesses" are third-party witnesses. LoganTree, for its part, also does not identify the existence of any third-party witnesses. Therefore, because neither party has identified the existence of third-party witnesses and employee witnesses carry no weight under this factor, this factor is neutral.

### 6. Location of books and records

This factor is neutral. *Jumara* instructs the Court to give weight to the location of books and records necessary to the case only "to the extent that the files [and other evidence] could not be produced in the alternative forum." *Jumara*, 55 F.3d at 879. Here, although Omron argues that "the location of any relevant Omron documents will . . . be in Illinois, where the company is headquartered" (D.I. 10 at 17), it has not identified any evidence that could not be produced in this District. Nor has Omron offered any showing that any "documentary evidence relevant to this

15

action is found exclusively" in the Northern District of Illinois. *See VLSI*, 2018 WL 5342650, at *7. Therefore, this factor is neutral.

### 7. Enforceability of the judgment

This factor is neutral, as judgments from this district and the Northern District of Illinois would be equally enforceable.

### 8. Practical considerations

This factor is neutral. The Court must consider "practical considerations that could make the trial easy, expeditious, or inexpensive." *Jumara*, 55 F.3d at 879. Here, Omron argues that this factor supports transfer because "it will be easier for Omron and Omron witnesses to attend hearings and trial in Chicago as that is where they are located." (D.I. 10 at 17). Moreover, Omron notes that "Chicago has two major airports with plentiful flights" for LoganTree. (*Id.*). In response, LoganTree contends that this factor is neutral, "[b]ut to the extent that transferring this case would be more convenient for Omron, it would not be any more convenient for LoganTree . . . ." (D.I. 13 at 15).

The parties' arguments regarding the convenience of the Northern District versus the convenience of this District "have been raised, in [some] way, as to other *Jumara* factors, and so the Court will not 'double-count' them here." *Elm Innovations LLC v. SK Hynix Inc.*, No. 14-1432 (LPS) (CJB), 2015 WL 4967139, at *11 (D. Del. Aug. 20, 2015). Given that there is no apparent broader public benefit to this case proceeding in this Court versus the Northern District of Illinois, this factor is neutral. *W.R. Berkley Corp. v. Niemela*, No. 17-32 (GMS), 2017 WL 4081871, at *4 (D. Del. Sept. 15, 2017) (finding factor to be neutral when "neither party addresse[d] the broader public costs of proceeding in one district or the other").

9. <u>Relative administrative difficulty due to court congestion</u>

This factor weighs against transfer. The Court takes judicial notice of the most recent Judicial Caseload Profiles,[8] as of March 31, 2019, which indicate that the median length of time between filing and trial for civil cases is 32.3 months in the District of Delaware and 37.8 months in the Northern District of Illinois. The March 31, 2019 profile also indicates that District of Delaware has a lower amount of pending cases per judgeship (602 cases) and percentage of civil cases over three (3) years old (9.2%) than the Northern District of Illinois (755 cases and 35.6%, respectively). These statistics advise the Court that the Northern District has more court congestion than this District. *See, e.g.*, *W.R. Berkley Corp.*, 2017 WL 4081871, at *5 ("[I[ncreased time[] from filing to . . . trial [is an] important factor[] that do[es] influence the court's calculus."). Therefore, this factor weighs against transfer.

10. <u>Local interest in deciding local controversies at home</u>

This factor is neutral. First, "[p]atent issues do not give rise to a local controversy or implicate local interests." *TriStata Tech., Inc. v. Emulgen Labs., Inc.*, 537 F. Supp. 2d 635, 643 (D. Del. 2008). Second, Omron's dispute with LoganTree, which does not reside in Illinois, is not a "local controversy" in the Northern District. *See Rosebud LMS, Inc. v. Salesforce.com, Inc.*, No. 17-1712 (CFC), 2018 WL 6061343, at *7 (D. Del. Nov. 20, 2018) (finding a local controversy did not exist in the proposed transferee district when both parties did not reside there). Thus, this factor is neutral.

11. <u>Public policies of the fora</u>

The parties agree that this factor is neutral. (*See* D.I. 10 at 17; D.I. 13 at 14-15).

---

[8] The March 2019 statistics for the District Courts of the United States can be found at: https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0331.2019.pdf.

12. Familiarity of the trial judge with the applicable state law in diversity cases

This factor is neutral. Logan Tree's claims arise under federal patent laws. Therefore, the familiarity of the respective districts with state law is not applicable.

13. Balancing the private and public factors

A balancing of the twelve *Jumara* factors advises the Court that this case should not be transferred to the Northern District of Illinois. Seven factors are neutral, three factors weigh against transfer, and two factors weigh in favor of transfer. Looking at the factors as a whole and treating LoganTree's choice of this forum as a paramount consideration, Omron has failed to meet its heavy burden of showing that the *Jumara* factors weigh strongly in favor of transfer.

## IV. CONCLUSION

For the foregoing reasons, the Court grants-in-part and denies-in-part Omron's motion. An appropriate order will issue.